UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **MERVIN PLACERES** | * | CIVIL ACTION |
| | * | NO: |
| **VERSUS** | * | |
| | * | DIVISION: |
| **I-FLOW, L.L.C.,** | * | |
| | * | DISTRICT JUDGE |
| | * | |
| | * | MAGISTRATE: |
| | * | |

FILED:_____      _____
                                                    DEPUTY CLERK

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

I.

Mervin Placeres ("Mr. Placeres") is of full age of majority and is domiciled in the Parish of Jefferson, State of Louisiana.

II.

Defendant I-Flow, L.L.C., a Kimberly Clark Care Company, is a Delaware limited liability company with its principal place of business in California.  On information and

1

belief, I-Flow, L.L.C. has conducted regular and sustained business in Louisiana by selling and distributing its products in Louisiana as described below.

III.

Defendant I-Flow, L.L.C. is referred to herein as the "Pain Pump Defendant."

## JURISDICTION AND VENUE

IV.

Subject matter of this action arises under 28 U.S.C. section 1332. The parties are citizens of different states, and the amount in controversy between the parties exceeds the sum of $75,000.00 exclusive of interest and costs.

V.

This Court has personal jurisdiction over the Defendant because the Defendant transacts business in Louisiana, and the wrongs complained of arose in Louisiana.

VI.

Venue is proper in this Judicial District pursuant to 28 U.S.C. section 1391 because a substantial part of the events giving rise to Plaintiff's claim occurred in this district, and because the Defendant transacts business in this district.

## FACTUAL BACKGROUND

VII.

Mr. Placeres underwent two surgeries on his right shoulder in Jefferson Parish, Louisiana. On September 19, 2006, at Jefferson Ambulatory Surgery Center and on September 27, 2006 at Tulane Lakeside Hospital, an "On-Q Pain Pump" designed,

2

manufactured, marketed, distributed and/or sold by the Pain Pump Defendant was implanted into his right shoulder by his orthopedic surgeon, Dr. Jay Binder. The Pain Pump injected Marcaine directly into Mr. Placeres' right shoulder joint on a continuous basis following the surgeries.              VIII.

While it is not possible to pinpoint the exact moment the Pain Pump began injuring Mr. Placeres' right shoulder, in all likelihood the injury occurred on or shortly after the administration of anesthetics via the post-operative Pain Pump following his surgeries on September 19, 2006 and September 27, 2006.

IX.

Pain Pump Defendant designed and manufactured a product called an "On-Q Pain Pump," a medical device intended to deliver, via catheter, continuous doses of pain relief medication directly into the shoulder joint space. The Pain Pump delivers anesthetic pain medication directly into the operative site immediately following shoulder surgery.

X.

The Pain Pump is designed and intended for use with common anesthetics such as Marcaine over an extended period of time. The continuous injection of such medications over time directly into the shoulder joint, however, causes serious and permanent damage to the cartilage of the shoulder joint. The result is a narrowing of the joint space and/or a condition called "chondrolysis." Chondrolysis is the complete or near complete loss of cartilage in the shoulder joint. It is an irreversible, disabling, and extremely painful condition.

XI.

Mr. Placeres had a Pain Pump inserted into his right shoulder after his September

19, 2006 and September 27, 2006 surgeries. The Pain Pump injected dangerous doses of medication continuously and directly into his right shoulder joint. As a result, Mr. Placeres has suffered loss of cartilage and chondrolysis in his right shoulder.

XII.

As a result of the narrowing of the joint spaces and/or chondrolysis caused by the dangerously defective Pain Pump, Mr. Placeres has already undergone significant additional treatment. He likely will require additional surgery due to the narrowing of the joint spaces and/or chondrolysis caused by the dangerously defective Pain Pump.

XIII.

The Pain Pump Defendant failed to warn Mr. Placeres or Mr. Placeres' surgeon about the unreasonable risks and dangers of using the Pain Pump and associated anesthetics in that manner. The surgeon used the Pain Pumps and associated anesthetics without material change in their condition between the time of manufacture and the time of their uses. The uses were foreseeable and intended and the uses were as instructed and directed.

XIV.

Mr. Placeres had neither actual nor constructive knowledge of Pain Pump Defendant's tortious conduct, the resulting damages and the causal link between the two until February 1, 2012, at the very earliest, when Mr. Placeres was seen by Dr. Jay Binder. Prior to this date, Mr. Placeres did not have any information or knowledge of the dangers of the Pain Pump and its potential for harm. Thus, Mr. Placeres did not learn of a possible cause of action until less than one year before the filing of the instant complaint. The alleged causes of action were not known, nor were they reasonably knowable, before that

time.  For that reason, any applicable prescription periods on Mr. Placeres' claims under the Louisiana Products Liability Act were tolled.

XV.

Defendant was aware of the defects as alleged in this Complaint at the time of sale. As a result, the prescription period on Mr. Placeres' redhibition claims was tolled until after the time Mr. Placeres discovered the defects less than one year before the filing of his claim.

**FRAUDULENT CONCEALMENT**

XVI.

Any applicable prescription statutes have been tolled by the knowing and active concealment and denial of material facts known by the Pain Pump Defendant when it had a duty to disclose those facts. Pain Pump Defendant kept Mr. Placeres ignorant of vital information essential to the pursuit of these claims, without any fault or lack of diligence on Mr. Placeres' part in filing a complaint on these causes of action.  Defendant's fraudulent concealment, however, did result in such a delay.

XVII.

Defendant engaged in the following conduct which was intended to conceal material facts:

    a.    Defendant knew that the Federal Food & Drug Administration (hereinafter referred to as "FDA") had repeatedly refused to allow an indication for use of Pain Pumps in the joint space, but it failed to disclose that information to doctors and patients;

    b.    Defendant failed to disclose that it did not undertake the necessary research,

      analysis and testing to determine the safety of the use of its Pain Pumps in the joint space despite knowing that the Pain Pumps would be used in that way;

c.     Defendant failed to disclose to the U.S. medical community that the use of Pain Pumps in the joint space was an "off label" use not approved by the FDA;

d.     Defendant failed to properly investigate and report to the FDA once it became aware of reports of dozens of patients who had allegedly suffered injury to their cartilage following use of Pain Pumps in their shoulder joints;

e.     Defendant failed to disclose – even to its own sales force -- that the FDA had repeatedly rejected a proposed indication for Pain Pump use in the joint space;

f.     Defendant failed to adequately disclose the risk of serious and permanent injury to cartilage associated with the use of Pain Pumps in the joint space for a prolonged period of time even after it became aware of the risk; and

g.     Defendant is and was under a continuing duty to disclose the true character, danger, and nature of its medical devices, but instead Defendant concealed them.

XVIII.

The failure of Defendant to meet the legally required duty under 21 C.F.R. 803 to inform the FDA about reports of cartilage damage related to the use of Pain Pumps in the joint space favors equitable tolling of the statute of limitations.

# FIRST CAUSE OF ACTION AGAINST PAIN PUMP DEFENDANT

## Louisiana Products Liability Act

XIX.

Mr. Placeres incorporates the allegations set forth in Paragraphs 1 through 18.

XX.

The Pain Pump Defendant was the "manufacturer" of the Pain Pump as that term is used in the Louisiana Products Liability Act.

XXI.

The Pain Pump was unreasonably dangerous for its intended use and constituted an unreasonable risk of injury to Mr. Placeres at the time it left Pain Pump Defendant's possession in one or more of the following particulars:

a. The labeling failed to instruct or warn the U.S. medical community that the safety of the device had not been established for use in the intra-articular joint space of the shoulder;

b. The labeling failed to disclose to the U.S. medical community that continuous injection of commonly used anesthetics, such as Marcaine, in high volumes, over two days or more, into the shoulder joint space, was likely to cause grave danger to the joint cartilage;

c. The labeling failed to include a precaution against placing the catheter of the Pain Pump directly in the shoulder joint space;

d. The labeling failed to provide to the U.S. medical community adequate

        instructions for the safe use of the device, failing specifically to identify quantities, flow rates, and type of anesthetic medications that could be safely and effectively used in the shoulder joint space;

e.    The labeling failed to disclose to the U.S. medical community that the effectiveness of the device was uncertain for use directly in the shoulder joint space;

f.    The labeling failed to disclose to the U.S. medical community that the FDA had considered requests to add use of the Pain Pump in the joint space as an indication for use in Pain Pump labels, but would not approve the addition of this use of Pain Pumps;

g.    The Pain Pump was designed to inject foreseeable and commonly used medications associated with damage to articular cartilage directly into the shoulder joint; and

h.    When used as designed, the Pain Pump delivered, over time, dangerously high doses of pain medications directly into shoulder joints.

XXII.

Despite the feasibility of giving adequate warning based on the scientific and technological knowledge at all relevant times, Pain Pump Defendant failed to provide adequate warning in the face of a likelihood of grave injury to Mr. Placeres.

XXIII.

Pain Pump Defendant knew or reasonably should have known of the dangerous characteristics of the Pain Pump at the time of sale.

XXIV.

Neither Mr. Placeres nor Mr. Placeres' physicians were aware of the danger and the nature of potential danger.

XXV.

The product defects alleged were foreseeable and substantial contributing causes of the injuries suffered by Mr. Placeres.  Specifically, the unreasonably dangerous characteristics of the Pain Pump, including but not limited to the administration of anesthetics into the shoulder joint space, proximately/legally caused Mr. Placeres to suffer permanent loss of cartilage in his right shoulder, resulting in severe pain and suffering, past and future; mental anguish, past and future; necessary medical expenses, past and future; disfigurement, past and future; physical impairment, past and future; as well as lost wages and earning capacity, past and future, and loss of enjoyment of life.

XXVI.

Pain Pump Defendant is therefore liable to Mr. Placeres pursuant to L.S.A.-R.S. 9:2800.54.

XXVII.

Pain Pump Defendant engaged in the following conduct with the flagrant indifference to or in conscious disregard for the safety of Mr. Placeres:

    a.    Pain Pump Defendant knew that the FDA had repeatedly refused to clear an indication for use of Pain Pumps in the joint space, but Defendant failed to disclose the repeated FDA rejections to the U.S. medical community;

    b.    Pain Pump Defendant failed to undertake the necessary research, analysis, and testing to determine the safety of the use of its Pain Pumps in the joint

9

space before distributing them, knowing that the pumps would be used in that manner;

c. Pain Pump Defendant failed to disclose to the U.S. medical community that use of the Pain Pump in the joint space was an "off label" use never approved by the FDA;

d. Pain Pump Defendant failed to promptly investigate and report to the FDA once it began receiving reports of patients who claimed to have suffered injury to their cartilage following Pain Pump use in the joint space, and further failed to even consider such cases as complaints relating to the safety of their pumps;

e. Pain Pump Defendant failed to disclose to their own sales forces that the FDA had repeatedly rejected a proposed indication for use of Pain Pumps in the joint space.  Nor did Pain Pump Defendant disclose to its sales force reports of patients who allegedly suffered injury to their cartilage following use of Pain Pumps in the joint space;

f. Pain Pump Defendant actively promoted the use of its Pain Pumps in the joint space despite knowing such use had never been cleared by the FDA, and that promotion and marketing of its Pain Pumps for that use violated federal law; and

g. Pain Pump Defendant failed to warn the U.S. medical community of the known risk of serious and permanent injury to cartilage associated with the use of Pain Pumps within the joint space in a manner reasonably likely to meaningfully warn the U.S. medical community, for a prolonged period of

time after Pain Pump Defendant became aware of the existence and seriousness of the risk.

## SECOND CAUSE OF ACTION AGAINST PAIN PUMP DEFENDANT

### Violation of Warranty of Redhibition

XXVIII.

Mr. Placeres incorporates the allegations set forth in Paragraphs 1 through 27.

XXIX.

By intentionally promoting and knowingly selling the Pain Pump for use to infuse dangerous medication into the intra-articular space of a shoulder following surgery, Pain Pump Defendant impliedly warranted to Mr. Placeres that it was merchantable, that it was proven safe and effective for use, that it was properly labeled, and that it contained proper instructions for its intended use.

XXX.

That implied warranty extended to Mr. Placeres' physicians and to Mr. Placeres as the ultimate consumer and user of the Pain Pump.

XXXI.

Mr. Placeres and Mr. Placeres' physicians reasonably relied on Pain Pump Defendant's judgment, indications, and statements that the pump was fit for its intended use.

XXXII.

The defects in the Pain Pump existed before the time of sale.

XXXIII.

Pain Pump Defendant was aware of the defects in the Pain Pump at the time of sale.

XXXIV.

The defects in the Pain Pump were not apparent to Mr. Placeres at the time of the sale.

XXXV.

Had Mr. Placeres been aware of the defects associated with the Pain Pump, Mr. Placeres would not have purchased it and had it implanted into his shoulders.

XXXVI.

Pain Pump Defendant violated the warranty of redhibition in that the Pain Pump was unsafe and unfit for use in infusing the medications into the intra-articular space of the shoulder following surgery, and not of merchantable quantity at the time Pain Pump Defendant placed it in the stream of commerce in that it had dangerous propensities when used as intended.

XXXVII.

As a direct and proximate result of the Pain Pump Defendant's violation of the warranty of redhibition, Mr. Placeres suffered damage.  Mr. Placeres is entitled to the return of any purchase price paid (including interest from the date of purchase), attorney's fees and costs, as well as pecuniary and non-pecuniary damages as set forth in this Complaint.

**PRAYER**

WHEREFORE, Plaintiff, Mervin Placeres, prays that Defendant be served with a

copy of this complaint, that Defendant be summoned to appear and answer same within the delays allowed by law, and that after due proceedings, there be judgment rendered herein in favor of Plaintiff and against Defendant, along with interest from the dates of injury until paid, all costs of these proceedings, and for all legal, general, and equitable relief.

    Respectfully submitted,

    **HEBBLER & GIORDANO, L.L.C.**

BY:    /s/Charles V. Giordano
    **CHARLES V. GIORDANO, T.A. (#22392)**
    **TASHA W. HEBERT (#25703)**
    **MICHAEL E. ESCUDIER (#26761)**
    Giordano@hebblergiordano.com
    Hebert@hebblergiordano.com
    Escudier@hebblergiordano.com
    3501 N. Causeway Blvd., Suite
    Metairie, Louisiana  70002
    Telephone:  (504) 833-8007
    Facsimile:  (504) 833-2866
    **Attorneys for Tracey Nicoll**

BY:    /s/Raymond B. Landry
    **RAYMOND B. LANDRY, T.A. (#21696)**
    **RICHARD L. TRAINA (#22170)**
    RBL@MollereFlanagan.com
    RLT@MollereFlanagan.com
    2341 Metairie Road
    Metairie, Louisiana 70004
    Telephone: (504)837-4950
    Facsimile: (504)837-3221
    **Attorneys for *Mervin Placeres***